UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SUSAN SAYLES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 13-cv-12969-IT |
| WOODS HOLE, MARTHA'S VINEYARD, and NANTUCKET STEAMSHIP AUTHORITY as the owners of the M/V ISLAND HOME, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

September 29, 2015

TALWANI, D.J.

I. Introduction

Plaintiff Susan Sayles ("Sayles") brings this suit for negligence against Defendant Woods Hole, Martha's Vineyard and Nantucket Steamship Authority ("Steamship Authority"). The maritime action arises out of an injury sustained by Sayles while onboard Steamship Authority's ferry the M/V Island Home on August 9, 2013. Presently before the court is Steamship Authority's Motion for Summary Judgment [#28]. In her Opposition to Defendant's Motion for Summary Judgment [#31], Sayles also includes a request for partial summary judgment as to liability. For the reasons set forth herein, the motion for summary judgment and request for partial summary judgment are DENIED.

II. Factual Background[1]

The M/V Island Home is a passenger and vehicle ferry, owned and operated by Steamship Authority. Pl.'s Statement Undisputed Material Fact [#32] [hereinafter Pl.'s Facts] ¶ 1. The M/V Island Home is licensed to operate on ferry routes on Nantucket and Vineyard Sounds. Pl.'s Facts ¶ 1. The M/V Island Home is equipped with hydraulically operated ramps or "lift decks" on both sides of the ferry. Pl.'s Facts ¶¶ 2, 11. The lift decks are lowered from the mezzanine to the vehicle deck, where cars are loaded. Pl.'s Facts ¶¶ 11-12. The decks with parked vehicles are then raised back to the mezzanine level for transit. Id. ¶ 12.

The door between each lift deck and the ferry interior (the "lift deck door") is a beige, metal fire door with red signs on either side reading "Watch Your Step." Pl.'s Facts ¶¶ 10, 36-37. The door opens toward the interior of the ferry, away from the lift deck. Pl.'s Facts ¶ 38. The threshold to the interior of the ferry is raised 1.5 to 2 inches and is painted with yellow diagonal markings. Pl.'s Facts ¶¶ 10, 40. The lift deck edge near the threshold is also painted with a yellow outline. Pl.'s Facts ¶ 10. From the time the ferry entered service in 2007 until at least September 7, 2013, there was a gap between the lift deck door and the raised threshold. Pl.'s Facts ¶¶ 42, 43, 57. The gap was wide enough for a woman's foot to slip into the gap when placed parallel to the threshold.[2]

Prior to August 9, 2013, Sayles twice parked her car on the lift deck when transiting on the M/V Island Home. Pl.'s Facts ¶ 5. On August 9, 2013, Sayles drove onto the M/V Island

---

[1] In ruling on summary judgment motions, the court properly construes the facts, as supported by the record, in the light most favorable to the non-moving party, and resolves all reasonable inferences in that party's favor. Pierce v. Cotuit Fire Dist., 538 F.3d 32, 39 (1st Cir. 2008).

[2] Sayles testified at deposition that the gap was "about six inches." Sayles Dep. 69 in Pl.'s Ex. A [#32-1]. Steamship Authority contends that the gap measured "approximately three [3] inches." Def.'s Resp. Pl's Statement Undisputed Material Fact [#36] [hereinafter Def.'s Resp. Facts] ¶ 42, Ex. A [#36-1].

Home and parked her car on one of the lift decks. Pl.'s Facts ¶ 9. After parking her car, Sayles got out and walked a few feet to reach the lift deck door. Pl.'s Facts ¶ 13. Sayles saw the red "Watch Your Step" sign before she pushed the door open. Sayles Dep. 53-54 in Def.'s Ex. C [#30-4]. She looked down, saw the raised threshold leading into the mezzanine interior, and stepped over the raised threshold. Id. at 54-55, 58. Sayles did not see the gap on the ramp side of the threshold. Id. at 55-56. Sayles passed through the doorway without incident. Pl.'s Facts ¶ 18.

Sayles purchased some food from the snack bar, and carried it back to her car, holding the food in a small cardboard box against her chest. Pl.'s Facts ¶¶ 20-21. When she approached the lift deck door from the interior mezzanine, Sayles paused for a minute or so to read the "Watch Your Step" sign on the inside of the door. Pl.'s Facts ¶¶ 21-22. Sayles then pulled the door open with her left hand, stepped onto the lift deck with her right foot, and then turned and pulled the door shut with her left hand. Sayles' Dep. 64 in Def.'s Ex. C. Sayles again did not see the gap. Id. at 68-69. Sayles brought her left foot forward to meet her right on the lift deck, but her left foot fell into the opening between the threshold and the lift deck. Pl.'s Facts ¶ 45. Sayles suffered injuries as a result of the fall. Pl.'s Facts ¶ 47.

Immediately after she fell, Sayles walked to her car. Pl.'s Facts ¶ 27. She then walked back through the lift deck doorway, looking down at the threshold as she crossed. Sayles' Dep. 80-81 in Def.'s Ex. C. Sayles then walked to the Purser's Office, where a crew member gave her an ice pack and offered an ambulance, which she declined. Pl.'s Facts ¶¶ 30-31. Sayles assisted in completing an incident report at the Purser's Office, and returned to her car through the lift deck door. Pl.'s Facts ¶¶ 32, 33.

On June 19, 2013, approximately two months before Sayles' fall, another woman suffered pain in her lower leg and bleeding at the ankle when her leg fell into a gap on the M/V Island Home. Pl.'s Facts ¶¶ 48, 49. Steamship Authority's incident report states that the woman was transported to a Martha's Vineyard hospital. Pl.'s Facts ¶ 49; Pl.'s Ex. E [#32-5]. The M/V Island Home's Master Turnover log notes dated August 9, 2013 (the date of Sayles' fall) further state that "a woman" got her foot caught in the space between the lift deck and the "bulkhead," in the same place that a "woman got her leg caught about a month back." Pl.'s Facts ¶ 54, Pl.'s Ex. H [#32-8].

Another incident report dated September 7, 2013 states that a third woman suffered a scrape and bruise on her lower left leg after her leg fell into a gap on the M/V Island Home. Pl.'s Pl.'s Ex. F [#32-6]. After this September 7, 2013 incident, Steamship Authority's engineering department installed a "D"-shaped piece of rubber on the edge of the lift ramp. Pl.'s Facts ¶ 57.

III. Discussion

*1. Summary Judgment Standard*

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if an issue can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). A fact is material if it has the potential to affect the outcome of the case. Id. The burden is on the moving party to demonstrate that there is an "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cattret, 477 U.S. 317, 325 (1986). Once the moving party has done so, "the burden shifts to the nonmoving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Research Corp.,

63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In evaluating cross-motions for summary judgment, the court views each motion separately and applies the applicable presumptions accordingly. Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013). The summary judgment standard in admiralty cases is the same as in non-admiralty cases. Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006) (citing Cerqueira v. Cerqueira, 828 F.2d 863, 864-65 (1st Cir. 1987)).

*2. Defendant's Motion for Summary Judgment*

A negligence cause of action in admiralty "invoke[s] the principles of maritime negligence, not those of the common law." La Esperanza de P.R. Inc. v. Cia de P.R., 124 F.3d 10, 17 (1st Cir. 1997) (citing Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408-09 (1953)). To establish negligence under maritime law, a plaintiff must demonstrate that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012); see also Evans v. Nantucket Cmty. Sailing, Inc., 582 F. Supp. 2d 121, 137 & n. 35 (D. Mass. 2008) (citing Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000)).

*a. Duty*

"It is axiomatic in maritime law that a carrier owes a duty of exercising reasonable care towards its passengers under the circumstances." Muratore v. M/S Scotia Prince, 845 F.2d 347, 353 (1st Cir. 1988) (citing Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959)). Steamship Authority argues first that under the circumstances here the danger of the gap was "open and obvious" and that it did not owe Sayles a duty to warn her of the obvious

danger. Sayles disputes that the gap was open and obvious.

A dangerous condition is "open and obvious" if it is "objectively speaking, so obvious that the defendant would be reasonable in concluding that an ordinarily intelligent plaintiff would perceive it and avoid it . . . ." O'Sullivan v. Shaw, 726 N.E.2d 951, 955 (Mass. 2000); see also Restatement (Second) of Torts § 343A, cmt. b.[3] Further, a condition is "obvious" if both the condition and the risk posed by the condition are apparent to and would be recognized by a person exercising ordinary perception, intelligence and judgment. See McMellon v. U.S., 395 F. Supp. 2d 422, 435-36 (S.D.W.V. 2005) (maritime negligence action noting that the danger posed by a condition, not just the condition itself, must be obvious); see also Restatement (Second) of Torts § 343A, cmt. b.

The facts are largely undisputed. Sayles has, however, raised a genuine dispute of fact as to whether the gap was objectively open and obvious, and thus whether Steamship Authority was under a duty to warn of the gap. Specifically, Sayles testified that despite looking in the direction of the gap when she passed through the doorway, she did not see the gap. Sayles' Dep. 54-57, 68-69 in Def.'s Ex. C. Sayles also testified that she had to turn, reach behind to pull the heavy door shut, and then bring her left foot forward. Id. at 64. Sayles has also introduced evidence that two other women also placed their foot in the gap. See Pl.'s Facts ¶¶ 48, 52; Pl.'s Exs. E [#32-5], F [#32-6]. Moreover, although the Steamship Authority points to Sayles' assessment that the gap was six inches wide, their own measurement is that the gap measured

[3] Courts may "recognize and enforce" aspects of state tort law "when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation." Just v. Chambers, 312 U.S. 383, 388 (1962). See also Windsor Mount Joy Mut. Ins. Co. v. Giragosian, 57 F.3d 50, 54 (1st Cir. 1995) ("State law may supplement maritime law when maritime law is silent…, but state law may not be applied where it is materially different from maritime law, or where it would defeat the reasonably settled expectations of maritime actors."). Section 343A of the Restatement may provide relevant guidance on questions concerning the scope of a duty to warn in certain maritime actions. See, e.g., Gemp v. United States, 684 F.2d 404, 407 (6th Cir. 1982).

"approximately three [3] inches." Def.'s Resp. ¶ 42. Ex. A [#36-1]. Notably, Steamship Authority has not introduced any evidence that the area was lit well enough to make that gap easily visible.[4] In sum, the court cannot conclude that the gap itself was visible or that the danger of a foot sliding in when placed parallel to the threshold was so objectively apparent that Steamship Authority could reasonably conclude passengers would notice the gap and the danger it posed such that Steamship Authority had no duty to warn passengers of the gap. Therefore, Sayles has raised a genuine dispute of fact as to whether the condition was open and obvious.

*b. Breach*

A shipowner breaches the duty of reasonable care if it does not warn passengers of harms that are reasonably foreseeable. See Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980). Steamship Authority argues that it satisfied any duty that was owed by posting "Watch Your Step" signs and marking the floor near the gap with yellow lines. Sayles contends that these warnings were inadequate to apprise passengers of the danger of the gap, and that Steamship Authority therefore breached its duty of reasonable care under the circumstances. Steamship Authority is correct to argue that, as a general proposition, a shipowner's warning about a condition may satisfy its duty of reasonable care. See Lee v. Regal Cuises, Ltd., 916 F. Supp. 300 (S.D.N.Y. 1996), aff'd, 116 F.3d 465 (2d Cir. 1997). However, if the warning signs are objectively inadequate to apprise passengers of the danger then they do not satisfy the duty of reasonable care. See Calderera v. Chandris, S.A., No. 91 Civ. 8181 (KMW), 1993 WL 362406, at * 4 (S.D.N.Y. Sept. 13, 1993) ("Once a hazardous condition is created, the mere posting of a sign warning passengers to 'watch your step' may be insufficient.").

[4] Sayles did testify that the lighting near the "Watch Your Step" signs and the lift deck in general was good, but there is no evidence in the record as to the lighting at the gap itself. Nor is there any evidence that lighting that was good enough to make the signs readable and floor visible was also good enough to also make the *absence* of flooring apparent. See Sayles Dep. at 63, 71 in Def.'s Ex. C.

Sayles testified that she saw and heeded what she understood the warning sign to refer to, namely, the raised threshold, and notwithstanding her attention to the warning signs, she still did not see the gap. Sayles Dep. 60-62 in Def.'s Ex. C. This testimony, the injury to the other two women, and the lack of any evidence in the record that the gap itself was visible, creates a question of fact as to whether Steamship Authority's warnings were sufficient under these circumstances to satisfy its duty of reasonable care.

*c. Causation*

Steamship Authority further contends that it is entitled to summary judgment because Sayles' own negligence was the proximate cause of her injuries. Sayles argues that any negligence on her part may reduce her damages, but does not bar recovery entirely.

In maritime, as under general principles of tort law, a defendant is not liable if its behavior is not the proximate cause of the plaintiff's injuries. See Ginop v. A 1984 Bayliner 27' Cabin Cruiser, 242 F. Supp. 2d 482. 486 (E. D. Mich. 2003). On this record, however, where it is undisputed that Sayles did not see the gap, if Steamship Authority is found to have owed a duty to warn that was not satisfied by the "Watch Your Step" warning, that breach may be found to be a proximate cause of Sayles injury.

It is well established under maritime law that "contributory negligence can be considered only in mitigation of damages." Carey v. Bahama Cruise Lines, 864 F.2d 201 (1st Cir. 1988) (citing United States v. Reliable Transfer Co., 421 U.S. 397, 407 (1975)). Therefore, if a plaintiff's breach of her own duty of reasonable care "was a *concurring* proximate cause of her injuries, then recovery may be proportionally reduced by the amount of such comparative fault." Evans, 582 F. Supp. 2d at 143 (emphasis added) (citing Menin v. Wilner, 424 F.2d 1058, 1059 (5th Cir. 1970)).

*3. Plaintiff's Request for Partial Summary Judgment on Liability*

Plaintiff seeks partial summary judgment on liability pursuant to Federal Rule of Civil Procedure 56(f)(1) which provides that, "[a]fter giving notice and a reasonable time to respond, the court may grant summary judgment for a nonmovant." The court declines to do so.

In finding that summary judgment for the Defendant is not warranted, the court does not find that the warning sign was unreasonable under the circumstances, or that anything short of minimizing the size of the gap was unreasonable under these circumstances. Rather, the court finds the current factual record insufficient to determine that the warnings were or were not adequate as a matter of law. Accordingly, Plaintiff's request that the court enter summary judgment as to liability is denied.

IV. Conclusion

For the foregoing reasons, Steamship Authority's Motion for Summary Judgment [#28] and Sayles' request for summary judgment are DENIED.

IT IS SO ORDERED.

/s/ Indira Talwani
United States District Judge